In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1900

KELLIE PIERCE,

*Plaintiff-Appellant,*

*v.*

ZOETIS, INC. and LOIS HEUCHERT,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:14 CV 00084 — **Theresa L. Springmann**, *Judge.*

ARGUED NOVEMBER 9, 2015 — DECIDED MARCH 15, 2016

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge,* and SHAH, *District Judge.**

ROVNER, *Circuit Judge*. Kellie Pierce sued her former employer Zoetis, Incorporated and her former supervisor Lois Heuchert, alleging causes of action under Indiana state law. The district court dismissed Pierce's amended complaint for

* Of the Northern District of Illinois, sitting by designation.

failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). Pierce appeals, arguing that she has stated a claim for tortious interference with a business relationship against her former supervisor Heuchert. Because the allegations in Pierce's complaint fail to state a claim for tortious interference under Indiana law, we affirm.

## I.

In February 2012, Pierce began working for Zoetis, Inc. as a sales representative for animal medicines. According to her amended complaint, which we accept as true at this stage of the proceedings, Pierce had a series of unpleasant encounters with Heuchert and others during her employ before she was ultimately terminated. For example, an instructor at Pierce's training classes told her that she needed to "sex it up" when making her sales presentations. When Pierce told Heuchert about the comment, Heuchert said that the instructor was an "arrogant dickhead" and that Pierce should "just hang in there" and finish the training.

Heuchert also did a number of things that made working for her difficult. She told Pierce to "stroke" the ego of her male "counterpart" (presumably Pierce's sales partner, although that is not clear from her complaint). Heuchert also "took over" sales calls and conversations while on supervisory ride-alongs with Pierce. Pierce alleges that Heuchert's interference on these occasions jeopardized Pierce's relationship with the clients. And at lunch on another occasion when Heuchert was accompanying Pierce on sales calls, Heuchert yelled at Pierce in a restaurant. Specifically, after Heuchert directed Pierce to role play, Heuchert interrupted Pierce's sales pitch by "slam[ming]

her fists down on the table" and yelling, "What the FUCK! Why are you talking about puppies?????"

Finally, Heuchert publicly humiliated Pierce again at a National Sales Meeting in Dallas, Texas in February 2013. When Pierce and her male associate Kerry Hab entered a room full of people at an awards banquet, Heuchert said, "What are you two sleeping together in the same room? You are always together!"

Pierce complained about Heuchert's behavior to Human Resources, which she alleges prompted Heuchert to retaliate against her. Zoetis' human resources director eventually connected Pierce with someone to investigate her complaint against Heuchert. Some time after the investigation, all sales representatives received an e-mail informing them that their sales quotas were going to be adjusted. Pierce alleges that her quotas were adjusted upward more substantially than the other employees'. She claims that the substantial increase in her sales quotas was a result of her complaint against Heuchert. Pierce also attributes an increased difficulty in receiving expense reimbursements around that time to retaliation by Heuchert.

In mid-July of 2013, Pierce took time off work for foot surgery. Around that same time, Evelyn Ortiz, who worked in Human Resources, informed Pierce that the investigation had concluded. She told Pierce that Heuchert had behaved inappropriately and that she would be disciplined. Pierce returned to work at the beginning of November, but was fired approximately three weeks later for poor performance related to her inability to meet the increased sales goals.

In March 2014, Pierce filed this diversity suit against Zoetis and Heuchert in federal district court, alleging Indiana state-law claims of wrongful termination against both Zoetis and Heuchert, and a claim of tortious interference with a business relationship against Heuchert. The district court concluded that Pierce had failed to state a claim upon which relief could be granted, *see* Fed. R. Civ. P. 12(b)(6), for either state-law claim. Pierce's wrongful termination claims were not viable because she failed to allege any recognized exception to Indiana's employment at will doctrine, which permits employers and employees to terminate employment at any time for "'good reason, bad reason, or no reason at all.'" *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007). The district court also rejected Pierce's argument that her claim fell within Indiana's narrow exception to the at will doctrine, which applies only in those cases where an employee is terminated for exercising a statutory right. *See Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). Because Pierce had failed to follow the prerequisites for bringing suit under the Indiana Civil Rights Law, Ind. Code §§ 22-9-1-1 through 22-9-1-18, she was also barred from seeking relief under that statute.

Finally, the court concluded that Pierce had failed to state a claim for tortious interference with a business relationship against Heuchert. Most of the behavior Pierce identified in her complaint was taken within the scope of Heuchert's duties as Pierce's manager, and as such, could not form the basis of a tortious interference claim. The court also concluded that Pierce had failed to allege any illegal action on Heuchert's part, as required to state a claim for tortious interference under Indiana law. Pierce appeals.

## II.

We note as an initial matter that there is no reason to doubt our subject-matter jurisdiction in this diversity action under 28 U.S.C. § 1332. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011) ("[W]e have an independent obligation to satisfy ourselves that jurisdiction is secure before proceeding to the merits.") Pierce is domiciled in Indiana, Heuchert is domiciled in Michigan, and Zoetis, Inc. is incorporated in Delaware and has its principal place of business in New Jersey. 28 U.S.C. § 1332(c)(1) (corporation is citizen of both its state of incorporation and state in which it has principal place of business); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 430 (7th Cir. 2009). Pierce also alleges over $75,000 in damages based on her lost salary of $80,000 annually plus bonuses as well as damages for alleged emotional stress she has endured. *See* 28 U.S.C. § 1332(a)(1).

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6). *E.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). We accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in Pierce's favor. *Id.* The complaint need only contain a short and plain statement of the claim demonstrating entitlement to relief. Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the complaint must have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bonte*, 624 F.3d at 463.

On appeal, Pierce challenges only the district court's conclusion that she failed to state a claim for tortious interfer-

ence with a business relationship against Heuchert. The elements of tortious interference with a business relationship under Indiana law are "'(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship.'" *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. App. 2005) (quoting *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n.21 (Ind. 2001)). Additionally, the plaintiff must prove that the defendant committed an illegal act to achieve her end. *Brazauskus v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003) (noting that plaintiff would "not have a claim for tortious interference, because in Indiana this tort requires some independent illegal action"); *Watson v. Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131, 139 (Ind. App.1989) ("In the State of Indiana, an element necessary to prove [tortious interference with a business relationship] is that a defendant acted illegally in achieving his end.").

Initially Pierce alleged that Heuchert tortiously interfered with her relationship with Zoetis by setting impossibly high sales quotas for Pierce and creating an environment that "allowed for" her termination. As the district court recognized, this theory goes nowhere because Heuchert's actions within the scope of her duties as Pierce's manager cannot provide the basis for a tortious interference claim, which is intended primarily to prevent unjustified interference by third parties. *See Kiyose v. Trs. of Ind. Univ.*, 333 N.E.2d 886, 891 (Ind. App. 1975) (affirming dismissal of former professor's claim against university trustees for tortious interference with prospective

advantage because "liability does not accrue for the performance of acts lying within the scope of the agent's duties").

On appeal, Pierce presumably concedes that acts within the scope of Heuchert's duties as her supervisor cannot provide the basis for relief. Instead, she focuses on Heuchert's comment at the sales conference in Dallas questioning whether Pierce was sleeping with her coworker. Although the statement would presumably fall outside of the scope of Heuchert's employment relationship with Pierce, she must still demonstrate that Heuchert committed an illegal act to achieve her end. In *Levee v. Beeching*, the Court of Appeals of Indiana reaffirmed that illegal conduct is an essential element in a claim for tortious interference with a business relationship, 729 N.E.2d 215, 222 (Ind. App. 2000). Although the court noted that there was no "definition or test" for demonstrating the required "'illegal conduct,'" it concluded that defamation did not satisfy the illegal conduct element. *Id.* at 222–23. Although Pierce criticizes *Levee* for failing to cite cases in support of its conclusion, she offers no reason to believe *Levee* is not good law or that the Indiana Supreme Court would deviate from the appellate court's conclusion that defamation cannot satisfy the illegal conduct element of a tortious interference claim. *See, e.g., Golden v. State Farm Mut. Aut. Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014) (noting that our task when sitting in diversity is to ascertain substantive content of state law as decided by the highest state court or as that court would decide the facts of the case before us). Thus, even if we assume that Heuchert's comment at the banquet was defamatory towards Pierce and that it interfered with some valid business relationship of

Pierce's (a big assumption), her claim would still fail because Heuchert committed no illegal act.

Alternatively, Pierce argues that Heuchert committed the tort of injurious falsehood, which she claims could establish the requisite illegal act. Given the refusal of Indiana courts to recognize defamation as the underlying illegal act in a claim for tortious interference with a business relationship, we question whether injurious falsehood would fare any better in satisfying the illegal action requirement. Ultimately, however, that question is irrelevant because Pierce's complaint does not state a claim for injurious falsehood.

Pierce argues that Heuchert's statements amounted to injurious falsehood as defined in the Restatement of Torts, which explains that one who publishes a false statement harmful to the interests of another is "subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." Restatement (Second) of Torts § 623A: Liability for Tort of Injurious Falsehood—General Principle (1977). Although Pierce fails to identify any Indiana cases applying the tort of injurious falsehood, in *Raybestos Prod. Co. v. Younger*, 54 F.3d 1234, 1236–37 (7th Cir. 1995), we noted without elaboration that a jury had awarded the plaintiff damages on injurious falsehood claims in a diversity suit applying Indiana law. Citing *Raybestos*, a district court applying Indiana law noted that, "it appears that there is at least some limited recognition" of such a cause of action in Indiana. *See Sanderson*

*v. Ind. Soft Water Servs. Inc.*, No. IP 00-0459-CHK, 2004 WL 1784755, at *7 (S.D. Ind. July 23, 2004) (citing *Raybestos*, 54 F.3d at 1236).

Despite the limited discussion of injurious falsehood under Indiana law specifically, it is clear more generally that injurious falsehood is distinct from defamation in that it is intended to protect *economic* as opposed to reputational interests. *See, e.g., State ex rel. BP Prod. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 924 (Mo. 2005) ("Injurious falsehood protects pecuniary loss whereas defamation protects reputational injury."); Restatement (Second) of Torts § 623A cmt. g (1977) ("The action for defamation is to protect the personal reputation of the injured party … . The action for injurious falsehood is to protect economic interests of the injured party against pecuniary loss[.]"). As such, the tort of injurious falsehood is designed to rectify pecuniary harm arising from such actions as disparagement of property (slander of title), disparagement of quality (trade libel), and disparaging statements of opinion as to a plaintiff's products. *See* Restatement §§ 623A, 624, 626.

Examining Heuchert's alleged statements about Pierce in this light makes clear that Pierce's complaint fails to state a claim for injurious falsehood.

On appeal, Pierce states conclusorily that her complaint properly alleged that Heuchert made "loud, false, and injurious statements" at the sales conference that damaged Pierce's "current and prospective business relationships with everyone there." But calling Heuchert's statements "injurious" and stating that they damaged her business relationships does not make it so. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Pierce's complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support her claim. *Twombly*, 550 U.S. at 556; *see also Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). But nothing in Pierce's complaint raises a *reasonable* expectation that discovery would yield evidence that she suffered pecuniary loss as a result of Heuchert's comment. The comment itself is unrelated to Pierce's products, her sales, or anything that would bear on her business success selling animal medicines. *Cf. Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp.2d 913, 932 (S.D. Ind. 2000) ("The insured's lack of any direct reference to a competitor's goods or products repeatedly has compelled courts to find that the underlying plaintiff has not alleged an advertising injury under this [product] disparagement offense.") (collecting cases). Indeed, Pierce's complaint fails to identify any pecuniary harm resulting from Heuchert's comment. Instead, Pierce alleges that all of her "team members were looking and laughing," and that she told Heuchert she was "inappropriate." But certainly Heuchert's team members were not the sort of business relationships whose diminished view of her would result in pecuniary harm. After all, she did not need to sell animal medicines to them.

The failure to identify pecuniary harm is not surprising given that originally, Pierce based her tortious interference claim on the theory that Heuchert interfered with Pierce's business relationship with Zoetis by unjustifiably increasing Pierce's sales quotas. Unfortunately for Pierce, her new theory

fares no better. There is simply nothing in the complaint that would support an inference that Pierce was financially harmed by Heuchert's statements or that her comment was intended to inflict pecuniary harm on Pierce.

More fundamentally, the comment at the sales conference had no bearing on the ultimate decision to fire Pierce. There is thus no logical connection between the comment and any pecuniary harm Pierce did suffer. Without allegations from which one could plausibly infer that Heuchert's comment was intended to and did cause Pierce pecuniary harm, Pierce cannot state a claim for injurious falsehood. Thus, even if we give Pierce the benefit of the doubt as to the unlikely possibility that Indiana courts would allow injurious falsehood to supply the required illegal act for a tortious interference claim, her claim would still fail.

In short, none of the allegations in Pierce's complaint could plausibly support a claim for tortious interference with a business relationship. The majority of the allegations in Pierce's complaint pertain to acts taken within the scope of Heuchert's supervisory duties, and thus cannot form the basis of her claim. Pierce is left only with the comments at the sales conference. As bizarre or inappropriate as Heuchert's statements may have been, they are insufficient to supply the illegal act required for a tortious interference claim, and Pierce's complaint was therefore properly dismissed.

**III.**

For the foregoing reasons, we AFFIRM the district court's decision dismissing Pierce's complaint under Rule 12(b)(6).