In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-3430

AMANDA MAXWELL BURGER,

*Plaintiff-Appellant,*

*v.*

COUNTY OF MACON and ALBERT JAY SCOTT,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 18-cv-3119 — **Colin S. Bruce**, *Judge.*

ARGUED SEPTEMBER 6, 2019 — DECIDED NOVEMBER 7, 2019

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges.*

KANNE, *Circuit Judge.* Under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), local governments may be liable for violating individuals' rights guaranteed by federal law. But local governments are responsible only for "their *own* illegal acts"; they are not responsible for *others'* acts falling outside an official local-government policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

After Amanda Burger was fired from her job at the State's Attorney's Office in Macon County, Illinois, she sued the county for allegedly firing her in violation of her federal constitutional rights. The district court dismissed the case, concluding that Burger failed to state a federal claim against the county.

Because the alleged illegal conduct was directed by an officer of the State of Illinois, and not Macon County, we affirm.

## I. BACKGROUND

Amanda Burger worked in the State's Attorney's Office for Macon County. She was employed by the State's Attorney's Office for about six years, starting in 2010. During that time, Albert Scott was the elected State's Attorney for Macon County and his deputy was Assistant State's Attorney Nichole Kroncke. Burger alleges that Kroncke had authority to hire and fire employees, including Burger.

After Burger had been working at the Office for about five years, she married. Her husband had been convicted of a felony drug offense in Wyoming in 2009 and had served out his sentence by the time of the marriage in 2015.

The same year she married, Burger told Scott that she believed Kroncke had violated state and federal laws, along with employee-handbook provisions, by disclosing confidential information and by discriminating against and harassing employees. Soon after Burger made this report to Scott, Scott relayed it to Kroncke, and Kroncke started treating Burger poorly: excluding Burger from meetings and other communications, bypassing Burger in the chain of command, and calling Burger demeaning names.

Beginning in February 2016, Burger complained of this treatment to Macon County human-resource personnel. A few months later, on May 19, 2016, Burger was called into a meeting with Scott and Kroncke. At the meeting, Burger was told that her employment with the State's Attorney's Office was being terminated immediately because of her association with her husband, who had been convicted of a crime. Burger was officially discharged the next day.

About two years later, Burger filed a four-count complaint in federal district court. She based three counts on Illinois state law, asserting two counts against Macon County and one count against Scott. The remaining count rested on federal law, 42 U.S.C. § 1983, and alleged that Burger's firing violated her federal constitutional rights. Burger asserted this count against Macon County only.

The county and Scott moved to dismiss Burger's complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). They argued that Burger failed to state a federal claim and that the remaining counts were time-barred or outside the court's jurisdiction. The district court granted the motion, dismissing the federal count and dismissing without prejudice the state counts. Burger appealed, arguing that she had stated a federal claim against Macon County.

## II. ANALYSIS

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). We accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* But we are not bound to accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, the complaint must allege factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.*

The alleged misconduct here is the firing of Burger in violation of her federal rights. Burger argues that the termination of her employment violated her rights in one of two ways: either she was fired based on a policy that employees working in certain positions at the State's Attorney's Office may not marry someone convicted of a crime—and that policy deprived Burger of her right to intimate association with her husband;[1] or she was fired in retaliation for reporting Kroncke's misconduct—and that retaliation deprived Burger of her right to engage in activity protected by the First Amendment.

Regardless whether Burger's firing violated her rights, we face this critical question: Was the firing an act for which Macon County is responsible? We conclude the answer is no.

Any state actor who deprives a person of federally guaranteed rights can be sued under 42 U.S.C. § 1983. But for a local government to be liable under § 1983, the rights-depriving act must carry out an official policy made by the local government's lawmakers or officials "whose edicts or acts may fairly be said to represent" the local government's policy. *Monell*, 436 U.S. at 694.

In other words, an act is an official local-government policy when the decision to adopt a particular course of action

---

[1] The right of intimate association is secured by the Fourteenth Amendment, not the First Amendment as Burger said in her complaint. *See Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005).

"is properly made by that government's authorized decisionmakers." *Pembaur*, 475 U.S. at 481.

Whether an official has local-government policymaking authority is a question of state law. *McMillian v. Monroe Cty.*, 520 U.S. 781, 786–87 (1997). We therefore turn to Illinois state law to determine whether the alleged rights-depriving acts are part of a Macon County policy.

Burger's complaint implies that she was fired because State's Attorney Scott and Assistant State's Attorney Kroncke decided to discharge Burger from her position in the State's Attorney's Office.[2]

We've recognized that Illinois State's Attorneys are state, rather than county, officers. *See, e.g.*, *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995) (citing *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990)); *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). And the same is true of Assistant State's Attorneys, even while at least part of their salaries—like portions of State's Attorneys' salaries—are paid out of the county treasury. *See* 55 ILCS 5/4-2001, -2003, -2005 (West 2005); *McGrath*, 44 F.3d at 571–72; *Bianchi v. McQueen*, 58 N.E.3d 680, 691 (Ill. App. Ct. 2016) (citing *Ingemunson*, 549 N.E.2d 1269); *Biggerstaff v. Moran*, 671 N.E.2d 781, 783–84 (Ill. App. Ct. 1996).

But whether Kroncke, like Scott, is a state officer does not resolve the issue. This is because even decisions by a state

---

[2] Burger's complaint mentions that a third person—a local attorney who was Macon County's corporate counsel—was present at the May 19 meeting with Scott and Kroncke. But the complaint does not allege that this attorney, or anyone other than Scott and Kroncke, made the firing decision.

officer may constitute county policy in certain situations—specifically, when the county can and does delegate county policymaking authority to the state officer. *See, e.g.*, *Pembaur*, 475 U.S. at 484–85. In this case we conclude that Macon County could not delegate the relevant authority to the State's Attorney.

An Illinois statute gives exclusive control over the internal operations of the State's Attorney's Office directly to the State's Attorney; the county cannot choose otherwise, *cf. id.* The statute provides: "The State's Attorney shall control the internal operations of his or her office and procure the necessary equipment, materials and services to perform the duties of that office." 55 ILCS 5/3-9006 (West Supp. 2008).

In carrying out this and other statutory responsibilities, Assistant State's Attorneys "are in essence surrogates for the State's Attorney." *Cook Cty. State's Attorney v. Ill. Local Labor Relations Bd.*, 652 N.E.2d 301, 303 (Ill. 1995). And "all acts done by [an Assistant State's Attorney] in that capacity must be regarded as if done by the State's Attorney," *People v. Nahas*, 292 N.E.2d 466, 470 (Ill. App. Ct. 1973). Accordingly, when it comes to the internal operations of the office, "[t]he State's Attorney is responsible for the professional conduct and acts of his or her assistants." *People v. Courtney*, 687 N.E.2d 521, 526 (Ill. App. Ct. 1997).

Kroncke and Scott's management of the State's Attorney's Office culminated in their decision to discharge Burger from her position within the Office. Because Macon County lacked authority—in the first place—to direct or control any decisions about the State's Attorney's Office's internal operations, it could not have delegated any decisional authority on internal-operation matters to Scott and Kroncke.

Indeed, by statutory prescription, this managerial author-ity to hire and fire rested exclusively with the State's Attor-ney, a state officer. So, the county could not be "responsible for establishing final policy with respect to the subject matter in question," *Pembaur*, 475 U.S. at 483, and Burger's firing may not "fairly be said to represent" the county's policy, *Monell*, 436 U.S. at 694.

Thus, on the one count Burger asserted on federal law, she did not state a basis for county liability under *Monell*. Without a viable federal claim, dismissal was appropriate.[3]

CONCLUSION

While § 1983 provides a cause of action against state actors who violate an individual's federal rights, a plaintiff seeking to recover for county wrongdoing must adequately allege that the illegal acts were part of a county policy. Burger could not do so here. State law placed the alleged illegal acts outside the county's policymaking control. We therefore AFFIRM the dis-trict court's dismissal of Burger's complaint.

---

[3] This is not to say that for some other claim, the county would neces-sarily lack responsibility for payment of an adverse judgment against a state officer. *See Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003); *cf. Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947 (7th Cir. 2003). But we need not address that situation. No judgment against a state officer could be issued on Burger's count resting on § 1983, as she did not assert that count against a state officer, like Scott.