In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2546

ERIC WHITE, on behalf of himself and others similarly situated,

*Plaintiff-Appellant,*

*v.*

UNITED AIRLINES, INC. and UNITED CONTINENTAL HOLDINGS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 C 114 — **Charles R. Norgle**, *Judge.*

ARGUED SEPTEMBER 21, 2020 — DECIDED FEBRUARY 3, 2021

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

WOOD, *Circuit Judge.* In 1994, Congress passed the Uniformed Services Employee and Reemployment Rights Act (USERRA) with the goal of prohibiting civilian employers from discriminating against employees because of their military service. 38 U.S.C. § 4301(a). At issue in this case is a matter of first impression in the courts of appeals: whether USERRA's mandate that military leave be accorded the same

"rights and benefits" as comparable, nonmilitary leave re-
quires an employer to provide paid military leave to the same
extent that it provides paid leave for other absences, such as
jury duty and sick leave. The district court answered that
question in the negative and dismissed the suit. We read the
statute differently. We find that paid leave falls within the set
of "rights and benefits" defined by the statute, and so we re-
verse and remand for further proceedings.

## I

Eric White has been employed as a commercial airline pi-
lot since 2005, first for Continental Airlines and then for
United Airlines following United's acquisition of Continental
in 2010. White has also served as a member of the United
States Air Force since 2000, first on active duty and now on
reserve duty. As a reservist he is required to attend periodic
military-training sessions to remain ready in the event he is
called back into active duty. White has taken periods of short-
term military leave, usually for a day or two at a time, during
which he did not receive pay from United.

Under United's collective bargaining agreement, pilots re-
ceive pay when they take other short-term leaves of absence,
such as jury duty or sick leave. United also maintains a profit-
sharing plan for its pilots. Under the plan, pilots are credited
with a share of the company's profit based on the wages they
earn over the relevant period. Because these credits are based
on wages, pilots who take paid sick leave or paid leave for
jury duty earn credit toward their profit-sharing plan, while
pilots who take short-term military leave do not.

In January 2019, White initiated this class action against
United Continental Holdings ("UCH") and its wholly owned

subsidiary, United Airlines, Inc. ("UAL") (collectively, "United"), alleging that United's failure to provide paid leave and profit-sharing-plan credit to reservists on military leave denies them "rights and benefits" that are given for comparable, nonmilitary leaves, thereby violating USERRA, 38 U.S.C. § 4316(b)(1). The district court dismissed White's complaint. It rejected White's interpretation of the statute because it feared that it would create a *de facto* universal requirement that private employers pay for military leave, contrary to the settled understanding of the statute. See, *e.g.*, *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002); see also 20 C.F.R. § 1002.7(c). In the alternative, the court held as a matter of law that jury duty and military leave are not comparable for the purposes of USERRA, and so the statute's equal-benefits rule does not apply. It did not reach White's class allegations.[1]

## II

We evaluate *de novo* a district court's grant of a motion to dismiss. *Mueller v. City of Joliet*, 943 F.3d 834, 836 (7th Cir. 2019). In addition, this case concerns a question of statutory interpretation, which we likewise consider *de novo*. *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018). On a motion to dismiss, we accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Burger v. Cnty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019). We note as well that

---

[1] Federal Rule of Civil Procedure 23(c)(1)(A) requires the district court to decide whether to certify a proposed class "[a]t an early practicable time." It does not condition certification on a winning case by the proposed class representative; indeed, such a rule would amount to one-way intervention, which the Rule was designed to end. Whether a class is proper is a threshold issue that is distinct from the ultimate merit of a claim.

we may affirm on any ground supported by the record, so long as the issue was adequately raised before the district court. *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 324 (7th Cir. 2019).

White raises three issues on appeal. His first assertion is that the continued receipt of one's wages during a leave of absence qualifies without further ado as one of the "rights and benefits" of employment contemplated by section 4316(b)(1). Next, he argues that United's profit-sharing plan, which credits pilots with a share of the company's profit based on the wages they earn over a relevant period, also falls within the scope of section 4316(b)(1). Finally, he contends that the district court erred in holding as a matter of law that jury duty and military leave are not comparable. United responds with an alternate theory for partial affirmance: it says that we must at least dismiss the claims against United Continental Holdings, because UCH is not an "employer" within the meaning of USERRA and so is not a proper defendant.

As a preliminary matter, we conclude that White's profit-sharing-plan claim rises or falls with his paid-leave claim. Both hinge on whether United's pilots are entitled to their wages while on military leave. We therefore focus on the question whether paid leave counts as one of the "rights and benefits" of employment under USERRA.

### III

We begin, as usual, with the statutory text. Section 4316(b)(1) provides:

[A] person who is absent from a position of employment by reason of service in the uniformed services shall be—

(A) deemed to be on furlough or leave of absence while performing such service; and

(B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1). Section 4303(2) defines "rights and benefits" as

the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

The Department of Labor has promulgated final regulations, after notice and comment, that implement USERRA. See 38 U.S.C. § 4331(a). The regulation provides:

If the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given

the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services. In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

20 C.F.R. § 1002.150(b).

White argues that section 4303(2) defines the term "rights and benefits" broadly, and under this definition paid leave— *i.e.*, compensation at the normal rate during a leave of absence—is included. We agree with him.

When Congress furnishes a statutory definition for a term, the specialized meaning it selects takes priority over the everyday meaning of words. See *Samantar v. Yousuf*, 560 U.S. 305, 315 (2010). Section 4303(2)'s definition of "rights and benefits" captures all "terms, conditions, or privileges," with no express limitations. Congress filled the rest of the definition with expansive and illustrative words such as "including" and "any." See *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the word 'any' suggests an intent to use [the accompanying] term expansive[ly]." (second alteration in original)); *Bloate v. United States*, 559 U.S. 196, 207 (2010) (explaining that the word "including" is "an expansive or illustrative term"). An employer's policy of paying employees during a leave of absence is a "term, condition, or privilege of employment." The language in USERRA that follows

confirms this reading, by specifying that receiving pay from one's employer is an "advantage, profit, privilege, or gain" of employment. This essentially ends our inquiry. "[W]hen Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020).

United pushes back against this reading. Its primary argument is that the statute does indeed suggest an important limitation, through the parenthetical in section 4303(2). That passage confirms that the term "rights and benefits" "(*includ[es]* wages or salary for work performed)." (Emphasis added.) Aha!, says United: if it just covers work *performed*, then it must exclude work *not performed* for the employer. It supports this interpretation in two ways: through the *expressio unius est exclusio alterius* canon, and through the rule against redundancy. If Congress had intended otherwise, United concludes, it would have written the parenthetical to read "including wages or salary" without the qualifier.

It is not a bad point, but in the end we are not persuaded. First is the uncomfortable fact that the word "including" inside a parenthetical makes a phrase illustrative, not exclusionary. See *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001); *United States v. Coscia*, 866 F.3d 782, 792 (7th Cir. 2017). It would be peculiar to read inclusive language embedded within a broadly worded definition as performing an exclusionary function.

Second, we are loath to place as much weight as United does on the *expressio unius* canon, which we have characterized as "much-derided" and "disfavored." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015); *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers*, 676 F.3d

566, 571 (7th Cir. 2012). It is especially inapt where, as here, applying the canon would contradict the surrounding text. After all, a parenthetical is just that—a parenthetical—"and it cannot be used to overcome the operative terms of the statute." *Chickasaw Nation*, 534 U.S. at 95 (internal quotation omitted).

Third, while United may be correct that our interpretation renders the phrase "for work performed" surplusage, the presence of some redundance is rarely fatal on its own to a statutory reading. Our task is to discern the meaning of the statute. As the Supreme Court recently explained in *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873 (2019), redundance provides "a clue as to the better interpretation" but is not always dispositive. "Sometimes," the Court said, "the better overall reading of the statute contains some redundancy." *Id.* at 881. This strikes us as just such a situation. There is a straightforward explanation for the parenthetical's verbosity that comes from the statutory history: when USERRA was passed in 1994, the text of the parenthetical read: "(*other than* wages or salary for work performed)." Pub. L. No. 103-353, § 2(a), 108 Stat. 3149, 3150 (1994) (emphasis added). That is, section 4303(2) originally excluded on-the-job compensation from the definition of "rights and benefits." In 2010, Congress amended the statute to overrule an Eighth Circuit decision that had interpreted the parenthetical to condone wage discrimination under a different section of USERRA. See 156 Cong. Rec. S7656, S7662 (daily ed. Sept. 28, 2010) (discussing *Gagnon v. Sprint Corp.*, 284 F.3d 839, 853 (8th Cir. 2002)). The amendment struck the words "other than" and replaced them with "including," leaving us with the definition we have today. See Veterans' Benefits Act of 2010, Pub. L. No. 111-275, Title VII, § 701(a), 124 Stat. 2864, 2887.

We decline United's invitation to read special significance into Congress's decision to fix the statute one way (*i.e.*, replacing "other than" with "including") instead of another (*e.g.*, deleting the entire parenthetical), absent any indication that the drafting choice was intended to be meaningful. This easily traced evolution of the law rules out any argument that the 2010 amendment (a measure intended to *expand* the definition of benefits by closing a gap) had in fact *shrunk* the scope of the definition *sub silentio*. Redundance happens all the time, and the better view is that is all we are seeing here.

United next invites us to broaden our gaze to the rest of USERRA and consider how the words "rights" and "benefits" are used in other provisions of the Act. It points to sections 4323(d)(1)(B) and 4324(c)(2), which allow employees to recover from their employers "for any loss of wages *or* benefits" caused by a USERRA violation. 38 U.S.C. §§ 4323(d)(1)(B), 4324(c)(2) (emphasis added). The use of the word "or" in these provisions, United contends, indicates that wages and benefits must have nonoverlapping meanings throughout the statute. At the same time, United acknowledges that "wages … for work performed" are included in the definition of "rights and benefits." It nonetheless insists that the parenthetical in section 4303(2) effects only a partial departure from the statutory baseline that it believes is established in sections 4323 and 4324, to the effect that wages are not benefits. Putting all this together, United concludes that wages for work not performed—*i.e.*, paid leave—are excluded. We reject this interpretation, both because (as we have explained) the parenthetical in section 4303(2) is not exclusionary and because sections 4323 and 4324 do not establish a baseline crisply distinguishing between wages and benefits.

In general, we presume that "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (internal quotation omitted). But that presumption is rebuttable, and here we find that it "readily yields" to an alternative explanation. *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 108 (2012). Again, USERRA's statutory history removes any ambiguity. Sections 4323 and 4324 predate the 2010 amendment to USERRA. Before 2010, some wages—namely "wages or salary for work performed"—were expressly *excluded* from the definition of "benefits" under section 4303(2), and so it made sense to list them separately. In 2010, Congress made a surgical change to the text of section 4303(2) to *include* wages for work performed, but it left the other provisions untouched. The presumption of consistent usage breaks down where a different Congress changes the meaning of a term in one section, but not others. The failure to maintain consistency (to the extent that there is such a flaw) is just as likely to be an oversight as a significant policy statement. *Cf. Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 n.8 (2004). United fails to persuade us to read the section any other way.

Because the definition of "rights and benefits" under USERRA embraces paid leave, we conclude that the district court erred in dismissing White's paid-leave claim as a matter of law. This also means that White is entitled to move forward with his (and the putative class's) profit-sharing claim. Although that is enough to resolve this part of the case, we think

it appropriate to add a word or two about United's additional, extratextual arguments.[2]

## IV

United asks us to examine how White's interpretation of "rights and benefits" interacts with related provisions of federal law. It asserts that our reading of section 4303(2) conflicts with a pre-USERRA statute that provides federal workers with 15 days of paid military leave per year. See 5 U.S.C. § 6323. The conflict arises, says United, because federal law has provided federal employees with paid leave for illness and jury duty since before 1994. See 5 U.S.C. § 6307 (sick leave); *id.* § 6322 (jury-duty leave). Adopting White's interpretation of USERRA, it argues, would require us to conclude that when Congress passed USERRA, it quietly overrode section 6323's 15-day cap on such leave with respect to federal employees. United reasons that this cannot be so, because *after* USERRA was passed, Congress amended section 6323 to

---

[2] It is our understanding that White and his fellow reservists receive a stipend from the military while performing their reserve duties. Although the amount of pay White receives from the military is not included in the record before us, the parties' submissions imply that the sum is less than the compensation White would otherwise receive from United for the same period. In this litigation, White argues that he should receive his full regular wages while on military leave, not the differential between his regular wage and the compensation he receives from the military. Because United does not raise the argument, we need not determine at this time whether USERRA requires United to pay White his full rate of compensation or only the differential between his regular pay and his military pay. We note, however, that the government provides a (modest) stipend for jury duty service, yet the Amended Complaint alleges that United pays employees their full salaries and wages during jury-duty leave without any offset.

cover additional groups of federal employees engaged in military service. Those groups, however, already should have been afforded paid leave under USERRA section 4316(b)(1).

We have two responses. First, the application of "whole code canons" rests on a shaky foundation. See William N. Eskridge Jr., Interpreting Law 118 (2016). Appeals to consistency with other areas of the U.S. Code—especially different *titles* of the Code—"represent a much greater risk of judicially overriding legislative assumptions and policies, because legislators and their staff are not aware of these canons or do not easily apply them." *Id.* In short, these arguments should be handled with caution.

Second, United exaggerates the inconsistency that exists. USERRA section 4316(b)(1) sets forth an equality principle, not a floor or a cap on benefits. And nothing in section 6323 indicates that it functions as a cap, rather than a floor. The latter statute says only that servicemembers who are federal employees accrue paid military leave "at a rate of 15 days per fiscal year," and, to the extent that any days go unused, the days may roll over into the next fiscal year. This benefit is automatic under 5 U.S.C. § 6323. USERRA itself says nothing about the specific benefits that an employer must provide. It is up to the employee to demonstrate that any given stretch of military leave is comparable to a form of nonmilitary leave that is accorded a benefit. At most, section 6323 may eliminate the need for federal-employee servicemembers to conduct this case-by-case comparison, at least up to the first 15 days of military leave. If a federal employee is required to take more than 15 days of military leave in a given fiscal year, USERRA section 4316(b)(1) permits paid leave to the extent that the marginal days of military leave are "comparable" to leave

based on circumstances such as sick leave or jury duty. There is nothing incompatible between section 6323 and USERRA.

United sets great store on two more extratextual arguments: It insists that Congress did not realize that it was opening the door to this kind of paid leave for military service, and it predicts that our reading of the statute would effect a costly sea-change for public and private employers, essentially making our interpretation an "elephant[] in [a] mousehole[]." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

Neither argument is persuasive. Both are in substantial tension with the text of the statute. As the Supreme Court recently reminded us in *Bostock v. Clayton County*, the language that Congress chose when drafting the statute is the most important consideration in a case like this—when the meaning of the text can be ascertained, it does not matter whether Congress considered or anticipated the specific application at issue. 140 S. Ct. at 1737. "The limits of the drafters' imagination supply no reason to ignore the law's demands." *Id.* Rather, "[w]hen the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest"—the written law prevails. *Id.*

The second point fails again to recognize that USERRA mandates only equality of treatment; it does not specify how generous or how parsimonious an employer's paid leave policies must be. Amici and United argue that our interpretation would unsettle previous expectations and increase payroll burdens on small businesses, the airline industry, and state and local governments. They point out that many states and municipalities require employers to provide at least some leave for illness and jury duty, and other private employers do so voluntarily. Labor costs will increase, however, only to

the extent that a few employees will be taking paid leave for one more purpose. Neither amici nor United makes any attempt to quantify how many people we are talking about. Less than one percent of employees in the national economy are reservists. See U.S. Dep't of Defense, *2018 Demographics: Profile of the Military Community* 63 (2016), https://download.militaryonesource.mil/12038/MOS/Reports/2018-

demographics-report.pdf; Bureau of Labor Statistics, *Employment Situation Summary Table A. Household data, seasonally adjusted* (2020), https://www.bls.gov/news.release/empsit.a.htm. Of those, some undoubtedly work for employers who do not provide compensation for comparable forms of nonmilitary leave, while others work for employers who already provide paid military leave. Amici's and United's objection also ignores the fact that only military leave comparable in duration to nonmilitary leaves of absence is covered by USERRA. See 20 C.F.R. § 1002.150(b).

## V

Our conclusion that this case was ended prematurely leaves open an important inquiry on remand. For section 4316(b)(1)'s equal-treatment rule to apply, White must show that any leave of absence for which his employer provides paid leave is comparable to any given stretch of military leave. 20 C.F.R. § 1002.150(b); see also *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821, 825 (3d Cir. 1986). This is primarily a question of fact. See *Rogers v. City of San Antonio*, 392 F.3d 758, 771–72 (5th Cir. 2004). The Department of Labor's implementing regulations list three factors that should be considered in the comparability analysis. Among these, "the duration of the leave may be the most significant factor to compare," but courts should also consider "the purpose of the leave" and

"the ability of the employee to choose when to take the leave."
20 C.F.R. § 1002.150(b).

The district court cut off this analysis too soon. It rested its
holding on the observation that, "[a]lthough both may be spo-
radic and uncontrollable in timing, all citizens … are subject
to jury duty … whereas military duties … are voluntarily
joined." This logic both ignores the text of the regulation and
impermissibly penalizes servicemembers for joining the mili-
tary, in direct contravention of USERRA's core purpose. Com-
parability analysis is not affected by the fact that the service-
member has voluntarily signed up for military service (and
thus will be eligible for military leave at some point). For al-
most 50 years now, the United States has had an all-volunteer
force. Instead, what matters is an employee's control over the
*timing* of her leave of absence—*i.e.*, whether she has the option
to choose *when* to take a given stretch of leave.

At this stage in the litigation, we do not have enough
information about the frequency and duration of White's
military-leave obligations, or those of his fellow reservist-
pilots, to say much more about this. Discovery may reveal that
all, none, or only part of those obligations are comparable to
jury duty or sick leave (or other short-term obligations) when
assessed with the help of section 1002.150(b). This is a matter
to be determined on remand.

## VI

United raises one last argument for partial affirmance: that
White failed plausibly to allege that one of the defendants—
United Continental Holdings—falls within the scope of
USERRA. It asks that the suit be dismissed as to UCH, leaving
UAL—UCH's wholly owned subsidiary—as the sole

defendant. Although the district court did not address this argument, we may consider it because United presented it there. See *Fid. & Deposit Co. of Md.*, 926 F.3d at 324.

The proper defendant in a USERRA action is the plaintiff's "employer." USERRA defines "employer" as an "entity that pays salary or wages for work performed or that has control over employment opportunities," including an "entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A).

In support of dismissal, United cites a number of district court decisions for the proposition that a defendant counts as a USERRA employer only if it has the authority to "hire and fire" the plaintiff, or it has some "control over employment opportunities" or "employment-related responsibilities." Relying on these cases, United argues that an entity that is not involved in relevant personnel decisions is not an employer under USERRA and so cannot be liable for USERRA violations. White's complaint, United contends, fails to allege any facts to support the proposition that UCH controls employment opportunities at UAL. United points out that the CBA carefully draws a distinction between UAL and UCH: for example, the parties to the CBA are listed as the pilots' union and UAL, and the CBA is signed only by UAL. And although the CBA *does* acknowledge that UCH has agreed to be bound by section 1 of the CBA, which concerns labor relations and dispute resolution, UCH did not agree to be bound by any other section. That includes all of those that are pertinent to this litigation: section 3 (compensation), section 12 (leaves of absence), section 13 (sick leave), and section 21.N (jury duty). Only UAL is a party to those provisions. Finally, United acknowledges that the UAL executives who negotiated the

CBA hold the same positions within UCH. It invokes *United States v. Bestfoods*, 524 U.S. 51 (1998), however, for the proposition that a parent corporation does not become subject to liability for a subsidiary's acts merely because the entities have common officers or directors. *Id.* at 69.

White argues that the complaint alleges that UCH has at least *some* control over employment opportunities at United. He alleges that UCH participated in the CBA negotiations through its officers, who wore both their United and UCH hats; that UCH agreed during the negotiations that it is an affiliate of United and that it would be bound by section 1 of the CBA; and that by participating in the negotiations UCH participated in the decision not to pay for short-term military leave while paying for jury duty and sick leave. White concludes that the complaint plausibly alleges that UCH joined in making the decisions being challenged in this litigation.

This is a close call, because of the lack of a clear standard for determining whether an entity is an "employer" within the USERRA context. Neither White nor United cites to any circuit or Supreme Court precedent concerning this precise question. We conclude, however, that for present purposes White has alleged enough to keep UCH in the case. We offer some preliminary thoughts here, but on remand the district court also may wish to consult other statutes in which this issue arises, such as Title VII of the Civil Rights Act of 1964 and the National Labor Relations Act.

USERRA's definition of "employer" includes any "entity to whom the employer has delegated the performance of employment-related activities." 38 U.S.C. § 4303(4)(A)(i). This implies that more than one entity may qualify as an "employer" of the same employee. The use of the word

"delegate[]" suggests an intent to reach both direct and indirect employers, including parent corporations if they pay "salary or wages for work performed or [have] control over employment opportunities." 38 U.S.C. § 4303. White's complaint plausibly alleges that UCH exercised the requisite level of control over the employment opportunities available to White. UCH did separately sign section 1 of the CBA. In this way, the complaint can be read to allege that the individual negotiators wore their UCH hats. The text of section 4303(4)(A)(i) does not require that an "employer" have direct control over the matters that constitute a USERRA violation; it says only that the employer must have control over the plaintiff's employment opportunities writ large. UCH's active participation in the CBA negotiations, and its approval of the CBA section are relevant to that issue.

To be clear, the presence of common officers for UCH and United *alone* does not create liability for UCH. But that fact, added to the allegations in the complaint of active participation, may suggest some measure of control for purposes of Section 4303(4)(A). Finally, we note that White's burden will be higher at later stages in the litigation. Discovery may reveal facts that demonstrate that UCH exercises control over White's employment opportunities, or it may show that UCH's role was purely formal and unrelated to the critical issues. We hold today only that White has alleged enough to survive a motion to dismiss UCH.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.