**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2703
_____

GERARD TRAVERS, on behalf of himself and all others
similarly situated,
Appellant

v.

FEDERAL EXPRESS CORPORATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-19-cv-06106)
District Judge: Honorable Mark A. Kearney
_____

Argued March 16, 2021

Before: SHWARTZ, PORTER, and MATEY, *Circuit Judges*.

(Filed: August 10, 2021)

Jonathan E. Taylor      [ARGUED]
Peter Romer-Friedman
Gupta Wessler PLLC
2001 K Street, N.W.
Washington, DC 20006

R. Joseph Barton
Colin M. Downes
Block & Leviton LLP
1735 20th Street, N.W.
Washington, DC 20009
     *Counsel for Appellant*

John Paul Schnapper-Casteras
Schnapper-Casteras PLLC
1717 K Street, N.W., Suite 900
Washington, DC 20006
     *Counsel for Amicus Curiae in Support of Appellant*
     *Reserve Officers Association of the United States*

Anton Metlitsky      [ARGUED]
Mark W. Robertson
O'Melveny & Myers LLP
7 Times Square
Times Square Tower, 33rd Floor
New York, NY 10036

Jason Zarrow
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

Colleen Hitch Wilson
Federal Express Corporation
3620 Hacks Cross Road, Building B, 3rd Floor
Memphis, TN 38125
        *Counsel for Appellee*

Erik R. Zimmerman
Spencer T. Wiles
Robinson, Bradshaw & Hinson, P.A.
1450 Raleigh Road, Suite 100
Chapel Hill, NC 27517
        *Counsel for Amici Curiae in Support of Appellee*
        *Chamber of Commerce of the United States of America*
        *and Airlines for America*

_____

OPINION OF THE COURT
_____

MATEY, *Circuit Judge*.

Those who serve in the military must also balance civilian life, including time away from a civilian job. To help servicemembers strike that balance, Congress enacted the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). Gerard Travers appeals the dismissal of his lawsuit alleging that USERRA requires employers like FedEx to pay reservists for short-term military leave. We conclude the best reading of USERRA directs employers to provide the benefit of compensation when they choose to pay other employees for comparable forms of leave. So we will vacate the contrary order of the District Court.

# I. BACKGROUND

Travers served in the United States Navy and the Naval Reserve. He also works for FedEx and fulfilled his Reserve duties during leaves from work. Travers received no compensation from FedEx for those absences because the company does not pay employees for military leave. But FedEx does pay employees who miss work for other reasons, like jury duty, illness, and bereavement, to name a few. Relying on USERRA, Travers challenged FedEx's decision. The District Court dismissed Travers's complaint, concluding that paid leave was not a "right and benefit" under USERRA. Travers now appeals.[1]

---

[1] The District Court exercised jurisdiction over the USERRA claims under 38 U.S.C. § 4323(b)(3) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review the dismissal of Travers's USERRA claim de novo. *Gordon v. Wawa*, 388 F.3d 78, 80 (3d Cir. 2004) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994)). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We "consider only those facts alleged in the complaint and accept all of the allegations as true." *Gordon*, 388 F.3d at 81 (quoting *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).

4

## II. ANALYSIS

USERRA is one of several statutes benefitting veterans. Our limited task: "interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute[,]'" as that is the "fundamental canon of statutory construction." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070, 2074 (2018) (first alteration in original) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). We "begin and end our inquiry with the text." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017). Of course, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Parker Drilling Mgmt. Servs. v. Newton*, 139 S. Ct. 1881, 1888 (2019) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). So we reach for our "toolkit" containing "the standard tools of interpretation" needed to consider the text, structure, and history of the law. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–15 (2019); *Parker Drilling*, 139 S. Ct. at 1892 ("[T]he standard we adopt today is supported by the statute's text, structure, and history, as well as our precedents."). Doing so allows us to determine the best ordinary reading of the statute. *United States v. Smukler*, 991 F.3d 472, 483 (3d Cir. 2021). Tools in hand, we begin by considering how USERRA defines the benefits Congress provides to working servicemembers.

### A. USERRA's Protected Benefits

#### 1. The Statutory History

With American participation in the Second World War looming, Congress enacted the Selective Training and Service Act of 1940 ("STSA") requiring all men between the ages of

5

twenty-one and thirty-six to register for military duty. Pub. L. No. 783, 54 Stat. 885. The first peacetime draft law in the nation's history,[2] the STSA protected the jobs of those who would soon join the Allied powers overseas.[3] *Id.* § 8(b), (c), 54 Stat. at 890. Along with requiring employers to restore veterans "to a position of like seniority, status, and pay," *id.* § 8(b), 54 Stat. at 890, the STSA allowed veterans to take military leave and entitled them to "insurance or other benefits offered by the employer . . . at the time such person was inducted into such forces[.]" *Id.* § 8(c), 54 Stat. at 890. In these ways, the STSA advanced the principle that one "who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946).

As active conflicts continued to summon Americans to service,[4] Congress responded. The Selective Service Act of 1948[5] bolstered employment rights for veterans by

---

[2] Selective Serv. Sys., *Historical Timeline*, https://www.sss.gov/history-and-records/timeline/ (last visited August 3, 2021); The Nat'l WWII Museum, *Research Starters: The Draft and World War II*, https://www.nationalww2museum.org/students-teachers/student-resources/research-starters/draft-and-wwii (last visited August 3, 2021).

[3] Susan M. Gates et al., *Supporting Employers in the Reserve Operational Forces Era* app. A at 1–2 (2013), https://www.jstor.org/stable/10.7249/j.ctt5hhtm0.7.

[4] *Historical Timeline*, *supra* note 2.

[5] Before the Selective Service Act re-enacted the STSA, a 1944 amendment extended the time under section 8 to apply

guaranteeing a servicemember any position "he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." Pub. L. No. 759, § 9(c)(2), 62 Stat. 604, 616. But the entitlement to benefits remained unchanged. *See id.* § 9(c)(1), 62 Stat. at 615. Then, "[i]n 1951, in order to strengthen the Nation's Reserve Forces, Congress extended reinstatement rights to employees returning from training duty" in the Universal Military Training and Service Act. *Monroe v. Standard Oil Co.*, 452 U.S. 549, 555 (1981); Pub. L. No. 51, § 1(s), 65 Stat. 75, 86–86 (1951). Additional protections followed over the next decade as Congress included short term leave for military obligations of less than three years. Pub. L. No. 86-632, § 1 para. 3, 74 Stat. 467, 467 (1960) (protecting an employee's "return to his position with such seniority, status, pay, and vacation as he would have had if he had not been absent for such purposes"); *see also Monroe*, 452 U.S. at 555.

"The end of the Vietnam War provided the need and the opportunity to revisit the protections and benefits granted to returning service members."[6] In response, Congress enacted USERRA's immediate predecessor, the Veterans' Reemployment Rights Act ("VRRA") as part of the Vietnam Era Veterans' Readjustment Assistance Act of 1974. Pub. L. No. 93-508, 88 Stat. 1578. Among other provisions, the VRRA entitled veterans, including reservists, to "like seniority, status,

---

for reemployment after relief from training or service. Pub. L. No. 473, § 1, 58 Stat. 798, 798 (1944). Congress then extended the law in 1945 with minor amendments and without change to section 8. Pub. L. No. 54, 59 Stat. 166, 166–67 (1945).

[6] Gates et al., *supra* note 3, app. A at 4.

and pay" when returning to civilian work, as well as the ability to "participate in insurance or other benefits offered by the employer[.]" *Id.* § 404(a), 88 Stat. at 1595.

Finally, in 1994, Congress enacted USERRA to replace the VRRA. Pub. L. No. 103-353, 108 Stat. 3149 (1994). Containing "the most expansive protection [to servicemembers] yet enacted,"[7] USERRA crystalized the language Travers and FedEx dispute, entitling reservists and other military personnel to certain employment benefits while on leave. To that text we next turn.

    2.    Text, Not Labels

Two of USERRA's provisions are at issue: § 4316(b)(1), which entitles employees taking military leave to the "other rights and benefits" their employers give to employees taking similar kinds of leave; and § 4303(2), which defines those "other rights and benefits."

Section 4316(b)(1) provides:

---

[7] Daniel J. Bugbee, *Employers Beware: Violating USERRA through Improper Pre-Employment Inquiries*, 12 Chap. L. Rev. 279, 281 (2008). By superseding the Supreme Court's decision in *Monroe*, USERRA also made it easier for a veteran to show a claim for employment discrimination. *Compare Monroe v. Standard Oil Co.*, 452 U.S. 549, 559 (1981) (discrimination must be "motivated solely by reserve status"), *with* 38 U.S.C. § 4311(c)(1) (discrimination based on reserve status can be "a motivating factor").

[A] person who is absent from a position of employment by reason of service in the uniformed services shall be—

(A) deemed to be on furlough or leave of absence while performing such service; and

(B) entitled to such other *rights and benefits* not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1) (emphasis added). Section 4303(2) defines "rights and benefits":

The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment

9

> benefits, vacations, and the opportunity to select work hours or location of employment.

*Id.* § 4303(2). How are these guarantees best read?[8]

Start with § 4316(b)(1). It adopts a simple formula: employees who take military leave from their jobs must receive the same "rights and benefits" provided to employees absent for other reasons. And on that much, the parties agree. They part ways on how to describe the "right or benefit" Travers wants, a disagreement that veers away from the text of USERRA. Travers argues that the benefit is "paid leave," a "shorthand to describe 'continu[ing] to receive pay while absent from work.'" (Reply Br. at 9 (alteration in original) (quoting Opening Br. at 2).) FedEx responds that the company never provides anyone "paid leave" generally. Rather, FedEx offers pay for certain *specific* kinds of time away from the job, such as "paid sick leave" or "paid jury-duty leave." (Response Br. at 1.) What Travers seeks, FedEx says, is "paid military leave." (Response Br. at 1–2.)

But the parties reduce the benefit to catchall labels that Congress did not write. The judicial power should not be used to create a shorthand guide to the words passed by both houses of Congress and presented to the President.[9] Subsections (A)

---

[8] An issue addressed by the Seventh Circuit, which held that USERRA covers short-term paid military leave. *See White v. United Airlines, Inc.*, 987 F.3d 616, 623 (7th Cir. 2021).

[9] "We operate in a system of written law in which courts need not—and generally cannot—articulate the law in the first instance. See U.S. Const., Art. I, § 1 (vesting '[a]ll legislative

10

and (B) of § 4316(b)(1) create a comparison of the "rights and benefits" an employee is owed. The first group consists of employees "absent from a position of employment by reason of service in the uniformed services." 38 U.S.C. § 4316(b)(1)(A). The second is "employees having similar seniority, status, and pay who are on . . . leave of absence[.]" *Id.* § 4316(b)(1)(B). Both groups contain employees who are not at work, Group 1, for military service, Group 2, for anything else.

That is how we measure the rights and benefits: does Group 2 get something that Group 1 does not? *See id.* § 4316(b)(1)(B) ("entitled to such other rights and benefits . . . as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence . . . .").[10] Can that thing be the

---

Powers' in Congress); Art. 1, § 7 (describing the bicameralism and presentment process). The Constitution, federal statutes, and treaties *are* the law. . . ." *Gamble v. United States*, 139 S. Ct. 1960, 1984 (2019) (Thomas, J., concurring). This modest task leaves us wary to advance a "judicial interpretation [based on labels that will invariably lead to] antecedent variations, [such that] from . . . five barley loaves and two fishes[,] five thousand lawyers [are] fed and there [will] remain[] twelve baskets of crumbs." *Burt v. Niagara Mach. & Tool Works*, 301 F. Supp. 899, 900 (W.D. Pa. 1969) (citing *Matthew* 14:13–21).

[10] A second comparison is beyond this appeal: whether military leave taken by Group 1 is comparable to the other types of leaves taken by Group 2. Travers alleges that his leave is comparable to the jury duty, sick, or bereavement leave that

leave itself, the right and benefit to not come to work without facing adverse action? No, because the word "other"[11] in § 4316(b)(1)(B) means something distinct or different, and absence from the job is common to both employee groups. That "other" benefit could be most anything—say, health insurance, a bonus, or a gym membership. What matters is *who* gets that benefit. Something the employer offers to Group 2 but denies to Group 1 becomes the comparator for a USERRA differential treatment claim.

USERRA describes a process for evaluating alleged disparate treatment of servicemembers on military leave by an employer. It does not create a class of rights and benefits. In other words, this is not a dispute about whether USERRA guarantees "paid leave" or "paid military leave." Instead, it is a quarrel over whether § 4316(b)(1) allows Travers to allege that FedEx extends a right and benefit in the form of pay to the group of employees who miss work for non-military reasons, but then denies pay to the group absent for military service.

---

FedEx provides to non-military employees. Whether FedEx offers a type of leave comparable to military leave is for the District Court to determine on remand. *See* 20 C.F.R. § 1002.150 (2021).

[11] When Congress enacted USERRA, "other" meant "being the one or ones distinct from that or those first mentioned or implied." *Other*, Merriam-Webster's Collegiate Dictionary (10th ed. 1993); *see also Other*, Webster's Third New International Dictionary of the English Language Abridged (1993) ("being the ones distinct from the one or those first mentioned or understood—used with a plural noun . . . not the same: different.").

Framing the issue using the text of USERRA, without resorting to extra-textual labels, avoids introducing ambiguities or, worse, creating a new set of rights and benefits outside of "the prescription for legislative action" in the Constitution and "the Framers' decision that the legislative power of the Federal government be exercised in accord with a single, finely wrought and exhaustively considered, procedure." *INS v. Chadha*, 462 U.S. 919, 951 (1983).

### 3. "Paid Military Leave" Is Not the Best Reading

What of FedEx's preferred characterization, styled "paid military leave"? (Response Br. at 4.) The argument has two parts, neither satisfactory, for it tries to read into USERRA a requirement absent from the text.

First, FedEx says Travers's benefit must be a "specific type[] of leave," such as "paid military leave," because USERRA does not reach "generic benefit[s]." (Response Br. at 25, 27; Supp. Ltr. at 1.) That is sort of true, because a plaintiff must show that *something* has been given to a group of employees not serving in the military that is denied to the military group. But that does not mean USERRA *only* reaches specific benefits. The text makes that clear, referring to benefits that are "generally provided by the employer." 38 U.S.C. § 4316(b)(1)(B). Reading "generally" to require "specifically" stretches the text not just beyond a best construction, but outside ordinary understanding.

Second (though it is really just more of the first), FedEx says there is nothing denied to any employee group because nobody in Group 2 is offered the benefit of "paid military leave." There is logic to that conclusion as well because, as

13

explained, an employer does not violate the protections in USERRA by denying a right and benefit equally to all employee groups. FedEx's math is the problem, as it needs to slip in the adjective "military" to make the calculation work. Section 4316(b)(1)(B) supplies the right formula, giving employees taking military leave benefits that are "generally *provided* by the employer to employees having similar seniority, status, and pay who are on furlough or leave of absence." (emphasis added). That rules out illusory benefits that exist in theory, not practice. Since employers cannot "provide" military leave, paid or otherwise, to non-military employees, there is no way to deny the benefit in a neutral way.

Third, adopting the definition proposed by FedEx could undermine the larger statutory scheme, because a court must separately compare the types of leave for sufficient similarity.[12] Shoehorning the label given to the leave into the definition of the benefit avoids making the actual comparison *between* different types of leave.[13]

---

[12] A point explained at *supra* note 10.

[13] Judge Shwartz agrees that there are two groups, military employees and non-military employees, and that USERRA ensures that military employees receive the same benefits as similarly situated non-military employees but does not see separate groups being created by the language of subsections (A) and (B) themselves. Judge Shwartz sees subsections (A) and (B) as providing two different things, as indicated by the words "shall be deemed" before the provision that discusses how an employee should be categorized while serving and the words "shall be entitled," which reflect benefits

All this means § 4316(b)(1) allows Travers to state a claim for entitlement to the benefit of pay while on leave. But recall that § 4302(2) defines "rights and benefits." So Travers's job does not end here, and he must also show that the pay non-military employees receive while on leave is one of the "rights and benefits" defined by § 4303(2).

**B.    Pay During Leave Is a "Right and Benefit" under USERRA § 4303(2)**

We turn next to § 4303(2), which defines "rights and benefits" under USERRA:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms,

_____

the person should receive. More specifically, she sees subsection (A) as providing that a person who is absent from work due to military service should be treated as if the person is on furlough or on a leave of absence. This language ensures that a person who is absent from work due to military commitments is not deemed to have quit or abandoned his or her job. Judge Shwartz sees subsection (B) as providing a different protection, namely that military employees are entitled to the same benefits as similarly situated non-military employees. The two subsections are joined by the word "and," which conveys that a person who is serving in the military is entitled to both. While Judge Shwartz reads this part of the statute differently from her colleagues, she agrees with the conclusion that, under USERRA, those serving in the military are entitled to the same benefits as similarly situated co-workers who are not serving.

15

conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2). Again, we determine the best ordinary meaning of these terms when enacted.

      1.     The Words at the Beginning of the Definition Are Broad

Begin with the words "terms," "conditions," and "privileges,"[14] all of which modify "employment."[15] Section

---

[14] The Hire Heroes Act of 2011 added the phrase "terms, conditions, or privileges" to the definition. Pub. L. No. 112-56, § 251, 125 Stat. 711, 729. This amendment superseded the Fifth Circuit's opinion in *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 176 (5th Cir. 2011), which held that the definition's absence of the words "terms, conditions, or privileges" meant that plaintiffs could not establish a hostile work environment claim under USERRA § 4311(a).

[15] No mysterious meanings lurk here. "Term" is a "condition[] under which an action may be undertaken or

4303(2) then defines the kinds of "terms, conditions, or privileges of employment" as "including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)." *Id.* § 4303(2). The words "any" and "including" mean the list explains, without exhausting.[16]

The ordinary understanding of the words in the list easily reaches a wide range of benefits, including payment during leave. *See, e.g.*, *Advantage*, Merriam-Webster's Collegiate Dictionary (10th ed. 1993) ("superiority of position or condition . . . [b]enefit, gain; *esp*: benefit resulting from

_____

agreement reached; stipulated or agreed-upon requirements[.]" *Term*, New Oxford American Dictionary (3d ed. 2010). "Condition" is "the state of affairs that must exist or be brought about before something else is possible or permitted[.]" *Condition*, *id.* And "privilege" is "a special right, advantage, or immunity granted or available only to a particular person or group of people." *Privilege*, *id.*

[16] A point repeated often by the Supreme Court. *See, e.g.*, *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the word 'any' suggests an intent to use that term expansively." (internal quotations and alterations omitted)); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) ("Any" and "including" are broad words and "make[] clear that the examples enumerated in the text are intended to be illustrative, not exhaustive."); *Bloate v. United States*, 559 U.S. 196, 207 (2010) ("Including" is "an expansive or illustrative term."); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (citation omitted)).

some course of action"); *Profit*, *id.* ("a valuable return . . . [n]et income usu. for a given period of time"); *Gain*, *id.* ("resources or advantage acquired or increased: profit"). FedEx pays employees who take non-military leaves for jury duty, bereavement, and health, placing employees taking leave for military service at a disadvantage. Naturally, pay is an "increase in resources" and a "valuable return" for non-military employees. And that ordinary meaning is confirmed by ordinary practice: human resource guides and manuals confirm that pay for leave matched the plain understanding of these terms.[17] All of which reinforces the best reading of USERRA.

---

[17] *See* HR Practitioners Guide, Schedules and Leave, Leave § 625.10 (Bloomberg Law 2021) ("Most employers that provide paid leave view the benefit as a tool that helps attract and retain employees . . . [it] protect[s] employees from income or job loss . . . [and] also gives employees time to handle family emergencies, doctors' appointments and other matters that might interfere with work performance."); Guide to Collective Bargaining, Leave Programs § 140 (Bloomberg Law 2021) (Leave "provisions generally allow employees to take time off work when needed for various purposes without the employee having to worry about the loss of employment or, in many cases, the loss of pay."); HR Series Policies and Practices, Leaves of Absence, Reasons for Offering Leave § 207:2 (Westlaw 2016) ("Many employers offer more leave than is legally required, finding that time off benefits can increase employee loyalty, ease personal stress, and even improve productivity.").

## 2. The Parenthetical Is Not Restrictive

FedEx and the District Court point to the parenthetical at the end of this list—"(including wages or salary for work performed)." 38 U.S.C. § 4303(2). The District Court reasoned that "[b]y explicitly providing 'rights and benefits' includes 'wages or salary for work performed,' Congress, by negative implication, *excluded* wages or salary for work *not* performed, *such as paid leave*." (App. at 16 (first and third emphases added).) But this is not the best reading given the law's history and its broad language.

As originally written, the parenthetical read "(*other than* wages for work performed)." § 2(a), 108 Stat. at 3150 (emphasis added). Congress later replaced "other than" with the word "including." Veterans' Benefits Act of 2010, Pub. L. No. 111-275, § 701(a), 124 Stat. 2864, 2887. That makes all the difference. Rather than constricting the types of benefits, the new language expanded the definition.[18] Given the history, we will not read in what Congress has taken out.[19]

---

[18] The expanded definition reached claims for discrimination based on wage under USERRA § 4311, which had been unavailable to plaintiffs. *See, e.g.*, *Gagnon v. Sprint Corp.*, 284 F.3d 839, 853 (8th Cir. 2002).

[19] The negative-implication canon requires particularly careful application and "applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (cleaned up); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ("We have long held that the

19

### 3. The List of Examples at the End of the Definition

Turn, at last, to the final clause in the definition[20] providing another list of example benefits that "include[] rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2). Humming a familiar refrain, FedEx argues that paid leave is too general, the statutory list too specific. For variation, it grabs on to the word "vacation," arguing that it and paid leave cannot both be benefits (since vacation is a subset of paid leave). Inconsistent? Our goal is not perfect harmony, only the best estimation of the words written by Congress. And the common understanding of the examples selected paints a broad understanding that includes pay while on leave.

---

*expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." (cleaned up)).

[20] The intermediate clause "that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice" offers no difficulty. 38 U.S.C. § 4303(2). "Accrue" is defined as "to come into existence as an enforceable claim: vest as a right." *Accrue*, Merriam-Webster's Dictionary of Law (1996). So pay while on leave must vest in an employment agreement, policy, plan, or practice. FedEx's employment policy satisfies this requirement.

20

Consider just a few examples. "Insurance coverage" includes more specific benefits such as life insurance, health insurance, and sickness and accident insurance.[21] How about

---

[21] Press Release, U.S. Dep't of Lab., Bureau of Lab. Stats., Employer Costs for Employee Compensation – March 1994, at 21 (June 16, 1994), https://www.bls.gov/news.release/archives/ecec_031994.pdf. Similarly, BLS's Employee Benefits Survey from 1993–1994 designated "insurance" as a larger category of more specific benefits that also included "sickness and accident insurance," "long-term disability insurance," "medical care," "dental care," and "life insurance." *See* Press Release, U.S. Dep't of Lab., Bureau of Lab. Stats., BLS Reports on Employee Benefits in Small Private Industry Establishments, 1994 (September 14, 1995), https://www.bls.gov/news.release/history/ebs_091495.txt; Press Release, U.S. Dep't of Lab., Bureau of Lab. Stats., BLS Reports on Employee Benefits in Medium and Large Private Establishments, 1993 (September 30, 1994), https://www.bls.gov/news.release/history/ebs_093094.txt; Press Release, U.S. Dep't of Lab., Bureau of Lab. Stats., BLS Reports on Employee Benefits in State and Local Governments, 1994 (September 14, 1995), https://www.bls.gov/news.release/history/ebs2_091495.txt. BLS's Employment Cost Index analyzed data collected from 23,000 occupations in private industry and state and local government. Employer Costs for Employee Compensation – March 1994, *supra*, at 21. And the Employee Benefits Survey, which collected information on employer-provided benefit plans, was "a major source of information for labor and management representatives . . . [providing a]

---

"a health plan?" In 1994, the term referred to a host of insurance coverage[22] ranging from fee-for-service, health maintenance organizations, preferred provider organizations, and exclusive provider organizations, each varying in the types of benefits provided.[23] So too a "pension plan," meaning both

comparison of their benefits plans with prevailing practices." U.S. Dep't of Lab., Bureau of Lab. Stats., Bulletin 2414, BLS Handbook of Methods, at 72 (1992).

[22] Michael Bucci & Robert Grant, *Employer-Sponsored Health Insurance: What's Offered; What's Chosen?*, Monthly Lab. Rev., October 1995, at 38–44, https://www.bls.gov/opub/mlr/1995/10/art6full.pdf (using "health care plans" and "health insurance" interchangeably when analyzing BLS data of employer-offered health plans from 1992–1993); *see also* Laura A. Scofea, *The Development and Growth of Employer-Provided Health Insurance*, Monthly Lab. Rev., March 1994, at 3–10, https://www.bls.gov/opub/mlr/1994/03/art1full.pdf.

[23] BLS Reports on Employee Benefits in Small Private Industry Establishments, 1994, *supra* note 21; BLS Reports on Employee Benefits in Medium and Large Private Establishments, 1993, *supra* note 21; BLS Reports on Employee Benefits in State and Local Governments, 1994, *supra* note 21; *see also* Bucci & Grant, *supra* note 22, at 40 tbl. 2; Employee Benefit Research Institute, Fundamentals of Employee Benefit Programs 221–49 (5th ed. 1997).

a subset of retirement benefits and a general category of plans.[24]

_____

[24] *See* BLS Handbook of Methods, *supra* note 21, at 57 (For purposes of the Employment Cost Index, BLS grouped "pension and retirement benefits" and "savings and thrift plans" under the greater category "pension and savings plans"); BLS Reports on Employee Benefits in Medium and Large Private Establishments, 1993, *supra* note 21 (including "defined benefit pension" as a subcategory of "retirement"); BLS Reports on Employee Benefits in Small Private Industry Establishments, 1994, *supra* note 21; BLS Reports on Employee Benefits in State and Local Governments, 1994, *supra* note 21. Pensions refer to defined benefit or defined contribution plans. BLS Reports on Employee Benefits in Small Private Industry Establishments, 1994, *supra* note 21 ("Defined benefit plans characteristically specify a formula for determining an employee annuity at retirement. Alternatively, defined contribution plans specify the employer's contributions, but do not predetermine the actual retirement dollar benefit."); Fundamentals of Employee Benefit Programs, *supra* note 23, at 56–57; William J. Wiatrowski, *On the Disparity Between Private and Public Pensions*, Monthly Lab. Rev., April 1994, at 5 n.7, https://www.bls.gov/opub/mlr/1994/04/art1full.pdf ("Earnings-based defined benefit pension plans [were] the most prevalent among white-collar workers . . .[but] [t]he presence of a large proportion of blue-collar and service workers in the private sector [led] to a variety of pension formulas, most notably those not based on earnings.").

It all tells the same story: Congress enacted a broad definition encompassing a wide range of benefits illustrated, not exhausted, by a list of examples. Nor does the expansion of employee benefits in the decades since 1994 change that reading, because "[w]hile every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd.*, 138 S. Ct. at 2074. Congress addressed that evolution by including a definition that varies in levels of specificity and generality. The result is that "rights and benefits" under USERRA § 4303(2) includes pay while on leave.[25]

---

[25] The codified statutory purposes of USERRA support this reading. *See* 38 U.S.C. § 4301(a). Interpreting the definition of "rights and benefits" under USERRA § 4316(b)(1) broadly to include pay while on leave advances the core purpose of "minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1). FedEx's policy of paying employees on non-military leaves but not those on military leaves directly disadvantages those who take military leave. And any interpretive doubt is construed in favor of the service member, under the pro-veteran canon. *See, e.g.*, *Gordon*, 388 F.3d at 81 (This Court "construe[s] USERRA's provisions liberally, in favor of the service member."); *Boone v. Lightner*, 319 U.S. 561, 575 (1943) ("The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation."); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (The STSA "is to be liberally construed for the benefit of those who left private life to serve

4.     The Specific-General Canon Is Inapplicable

Finally, we see no conflict between USERRA and 5 U.S.C. § 6323(a), a law first enacted in 1917 providing fifteen days of paid military leave for federal government employees. Drawing on the specific-general canon, the District Court reasoned that 5 U.S.C. § 6323, the more specific statute, would be rendered superfluous by finding that USERRA entitled Travers to pay for his military leave.

There is no need to reach for the specific-general canon, a tool that helps courts reconcile conflicting statutory provisions when "no permissible meaning can eliminate the conflict." Garner & Scalia, Reading Law: The Interpretation of Legal Texts 183 (2012); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)) (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974)). In other words, where a statute does "not expressly contradict[] the original act, [it] shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all." *Id.* (quoting T. Sedgwick, The

their country in its hour of great need."); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991) ("[W]e would ultimately read the provision in King's favor under the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.").

Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874)).

That is this case here, because reading USERRA § 4316(b)(1) to include pay during leave does not contradict, negate, or nullify 5 U.S.C. § 6323(a). Section 6323(a) provides a fifteen-day floor of paid military leave for government employees. This floor is more generous than other federal non-military leaves, such as sick leave. *See* 5 U.S.C. § 6307(a) (federal government employees are entitled to thirteen days of paid sick leave). In other words, 5 U.S.C. § 6323(a) is not nullified because it provides additional benefits to servicemembers without USERRA.[26]

### III. CONCLUSION

FedEx allegedly pays employees for some leave but declines to compensate Travers for leave taken to serve his country. That states a claim under USERRA, a statute with a long history of protecting the jobs and accompanying benefits of Americans called to our common defense. Best understood, USERRA does not allow employers to treat servicemembers differently by paying employees for some kinds of leave while exempting military service. So we will vacate and remand the District Court's grant of FedEx's motion to dismiss.

---

[26] If a factfinder saw a comparable leave (a point discussed at *supra* note 10) granting more than fifteen days of pay by statute, that could trigger a different analysis. But FedEx offers no such example, and we are aware of none. Should the hypothetical become reality, Congress remains free to rebalance the scales. In the meantime, we need not rewrite USERRA to knock back theoretical concerns.