**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3294
_____

JAMES P. SCANLAN; CARLA RINER,
*individually and on behalf of all others similarly situated*,

Appellants

v.

AMERICAN AIRLINES GROUP, INC.; AMERICAN
AIRLINES, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-18-cv-04040)
District Judge: Honorable Harvey Bartle, III
_____

Argued on December 12, 2023

Before: BIBAS, PORTER, and FREEMAN, *Circuit Judges*

(Opinion filed:  May 21, 2024)

R. Joseph Barton
Colin M. Downes
Barton & Downes
1633 Connecticut Avenue NW, Suite 200
Washington, DC 20009

Peter Romer-Friedman
Jonathan E. Taylor   **[ARGUED]**
Gupta Wessler
2001 K Street NW, Suite 850 North
Washington, DC 20006
        *Counsel for Appellants*

L. Nicole Allan
O'Melveny & Myers
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

Anton Metlitsky      **[ARGUED]**
Mark W. Robertson
O'Melveny & Myers
7 Times Square
Time Square Tower, 33rd Floor
New York, NY 10036

M. Tristan Morales
Jason Zarrow
O'Melveny & Myers
400 S. Hope Street, 18th Floor
Los Angeles, CA 90071
        *Counsel for Appellees*

Michael Heckmann
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001
      *Counsel for Amicus Appellees*

––––––––––––––

## OPINION OF THE COURT

––––––––––––––

**FREEMAN**, Circuit Judge.

American Airlines pilots sued their employer for failing to pay them and provide certain benefits while they were on short-term military leave. They claim that the airline violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), which provides employees on military leave the right to receive the same employment benefits as other similarly situated employees. They also claim that the airline breached their profit-sharing plan by failing to account for imputed earnings during periods of military leave.

The District Court granted summary judgment for the airline on all claims. We will affirm the judgment for the airline on the breach of contract claim. But a trier of fact must resolve disputed facts material to the USERRA claims, so we will reverse the judgment for the airline on those claims and remand for further proceedings.

## I

James P. Scanlan, a retired Major General in the United States Air Force Reserve, and Carla Riner, a Brigadier General in the Delaware Air National Guard, are pilots for American Airlines.[1] Together, they represent a class of pilots who took short-term leave from their employment at the airline to perform military duties between January 1, 2013 and October 31, 2021.[2]

The airline does not pay its pilots when they take military leave. In contrast, it does pay pilots when they take bereavement leave and jury-duty leave. It provides pilots three days of paid bereavement leave upon the death of a qualifying relative. And when pilots take leave for jury duty, the airline pays them the difference between their jury-duty payments and their airline compensation for the duration of the jury service.

The pilots are also part of the airline's profit-sharing plan. The plan vests a compensation committee and the individuals it designates with discretion to interpret its terms. The plan states that the airline shares five percent of its pre-tax profits with employees based on each employee's "Eligible

---

[1] Defendants are American Airlines Group, Inc. ("AAG") and its subsidiary, American Airlines, Inc. ("AAI"). For simplicity, we refer to them collectively as "the airline." However, AAG is the sole defendant for two claims, and AAI is the sole defendant for the third claim.

[2] For purposes of this action, short-term military leave is defined as sixteen or fewer days. After sixteen days of leave, an employee is removed from the airline's payroll and reinstated upon his return.

Earnings." App. 922. Eligible Earnings are based on the employee's "Compensation," which is defined (in relevant part) as "the sum of: . . . [a]mounts paid to an Employee for a Plan Year . . . less: . . . [i]mputed income." App. 937–38. Simply put, "Compensation" is the amount reported on an employee's W-2 form. Because the airline paid the pilots during jury-duty and bereavement leave, those payment amounts were reported on the pilots' W-2 forms and included in their profit-sharing calculations. However, pilots received no profit-sharing credit for military leave periods because the airline did not pay them for those periods.

## II

USERRA entitles employees who take military leave "to such other rights and benefits . . . as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence." 38 U.S.C. § 4316(b)(1)(B). It defines "rights and benefits" as the "terms, conditions, or privileges of employment, including any advantage, profit, [or] privilege . . . that accrues by reason of an employment contract or . . . employer policy, plan, or practice." § 4303(2). We have held that "'rights and benefits'" . . . includes pay while on leave." *Travers v. Fed. Express Corp.*, 8 F.4th 198, 208 (3d Cir. 2021); *id.* at 199 (holding that employers must provide compensation for military leave "when they choose to pay other employees for comparable forms of leave").

A regulation addresses how to implement USERRA's rights-and-benefits provisions. It states that, where benefits vary depending on the type of leave, an employee on military leave is entitled to "the most favorable treatment accorded to

5

any comparable form of leave when he or she performs service in the uniformed services." 20 C.F.R. § 1002.150(b). It also provides guidance about comparability:

> In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

*Id.*

### III

The pilots claim that the airline violated USERRA § 4316(b)(1) in two ways: (1) by failing to pay pilots for periods of short-term military leave despite paying pilots for periods of jury-duty and bereavement leave; and (2) by failing to credit pilots under the profit-sharing plan for their imputed earnings during periods of short-term military leave despite crediting earnings from periods of jury-duty and bereavement leave. They also claim that the airline breached its contractual obligations (i.e., the terms of the profit-sharing plan) by refusing to credit imputed earnings during periods of military leave as compensable for profit-sharing calculations.[3]

---

[3] The District Court certified a subclass for each claim.

The airline moved for summary judgment on all three claims, and the pilots cross-moved for summary judgment on the breach of contract claim only. As to the USERRA claims, the airline argued that short-term military leave is not comparable to jury-duty leave or bereavement leave because of differences in duration, frequency, purpose, and control over when to take leave. Each side presented evidence about those comparability factors.[4]

The parties agree on some of the relevant statistics. During the class period, a single instance of short-term military leave averaged about 3.3 days, while an instance of jury-duty leave averaged 1.8 days and an instance of bereavement leave averaged 2.7 days. The most common duration of both short-term military leave and jury-duty leave was one day, while the most common duration of bereavement leave was three days. [5]

The parties also agree about the frequency with which pilots took each type of leave. On average, pilots took short-term military leave 7 times, jury-duty leave 1.3 times, and bereavement leave 1.2 times annually. But pilots most commonly used each type of leave once per year. And in any given year, pilots took an average of 21.9 total days of short-

---

[4] The pilots' USERRA claim about profit sharing rises or falls with their claim about paid leave. Both depend on whether military leave is comparable to jury-duty or bereavement leave. *See White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

[5] A majority of each type of leave—65.2% of short-term military leaves, 87.2% of jury-duty leaves, and 97% of bereavement leaves—lasted between one and three days.

term military leave, 2.3 total days of jury-duty leave, and 3.1 total days of bereavement leave.

Regarding the purpose of each type of leave, the parties agree that bereavement leave serves dual purposes: it permits pilots to grieve their loved ones, and it protects public safety by giving pilots time away from the cockpit to grieve. According to the pilots, jury-duty leave and military leave also support a public purpose: civic duty. The airline agrees that jury-duty leave fulfills a civic duty, albeit a compulsory one. It also agrees that *one* purpose of military leave is civic duty, but it contends that military duty primarily enables pilots to have parallel careers with an airline and the military.

All agree that the pilots have little control over when they take jury-duty and bereavement leave, but the parties presented conflicting evidence about the pilots' ability to schedule their military leave. The pilots presented evidence that they generally lack control over when they fulfill their military duties and that their requests for schedule changes are frequently denied. Scanlan testified that service members in military flying units have less ability to control their training schedules than other members of the military, and that short-term military obligations generally arise on short notice. In contrast, the airline presented evidence that pilots have a great degree of control over scheduling their military service periods to accommodate their civilian obligations and that the military schedules duty periods in advance and with flexibility.

The District Court held that the pilots could not prevail on their USERRA claims because short-term military leave is not comparable to jury-duty or bereavement leave when comparing duration, frequency, control, and purpose. It reasoned that analyzing "the frequency of military leave, along

8

with duration, is necessary to have a complete picture." App. 17. When it conducted that joint duration-and-frequency analysis, it found "a distinct difference among the three types of leave not only in the average time away from the job in a year but also in the fact that a pilot's military leave generally recurs on a regular basis and often over a number of years[,] while the other forms of leave are generally short-term and sporadic." App. 18.

As to purpose, the Court found that "it cannot be disputed that the purposes of the three types of leave are different." App. 22. It explained that, unlike jury-duty and bereavement leave, pilots take military leave "not only out of a sense of patriotism but also for more than minimal compensation from the Government." App. 22. As to control, the Court found that pilots "often have significantly more flexibility in scheduling military leave than they do with respect to jury duty and bereavement leave." App. 21. Because it found none of the factors comparable, the District Court granted summary judgment for the airline on the USERRA claims.

Turning to the breach of contract claim, the Court concluded that, under Texas law, the profit-sharing plan unambiguously excludes imputed income from periods of military leave. It granted summary judgment for the airline on this claim and denied the pilots' cross-motion for summary judgment.

## IV

The District Court had subject-matter jurisdiction over the USERRA claims under 38 U.S.C. § 4323(b)(3) and 28 U.S.C. § 1331. It exercised supplemental jurisdiction over the

9

breach of contract claim under 28 U.S.C. § 1367(a).  We have jurisdiction under 28 U.S.C. § 1291.

We review a district court's grant or denial of summary judgment de novo.  *Pichler v. UNITE*, 542 F.3d 380, 385 (3d Cir. 2008).  We apply that same standard to questions of contract construction.  *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine factual dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We "view the facts in the light most favorable to the nonmoving party[] [and] draw[] all inferences in its favor."  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 388–89 (3d Cir. 2017).

## V

Comparability is critical to the pilots' USERRA claims.  The pilots contend that short-term military leave is comparable to jury-duty leave or bereavement leave.  For types of leave to be comparable, they must be similar.  *Cf. United States v. 84.4 Acres of Land, More or Less*, 348 F.2d 117, 119 (3d Cir. 1965) (determining whether properties are comparable to the condemned property based on whether they are "sufficiently

similar"). This is a question of fact.[6] So unless no reasonable jury could find the types of leave to be similar, the comparability question must go to a jury. *See Care One Mgmt. LLC v. United Healthcare Workers E.*, 43 F.4th 126, 148 (3d Cir. 2022) (noting that where the record "is not conclusive on [an] issue[,] . . . [it] is a question of fact that a jury should decide").

Here, viewing the evidence in the light most favorable to the pilots, a reasonable jury could find that short-term military leave is comparable to jury-duty leave or bereavement leave based on the three factors mentioned in the implementing regulation, and any other factors it may consider.

*Duration.* A reasonable jury could conclude that the types of leave are comparable because the average duration of a single instance of each type of leave is between 1.8 and about 3.3 days, or because the most common duration is between one and three days. The District Court held that it must consider frequency alongside duration, but that is not required by § 4316(b)(1) of USERRA or the implementing regulation. The regulation provides a non-exhaustive list of comparability

---

[6] *See Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1003 (9th Cir. 1986) ("Comparability is a question of fact."). We have not previously said this directly, but we now join our sister Circuits who have. *See United States v. 125.07 Acres of Land, More or Less*, 667 F.2d 243, 252 n.18 (1st Cir. 1981); *United States v. Certain Ints. in Prop.*, 326 F.2d 109, 113 (2d Cir. 1964); *United States v. 2,635.04 Acres of Land, More or Less*, 336 F.2d 646, 649 (6th Cir. 1964); *United States v. 819.98 Acres of Land, More or Less*, 78 F.3d 1468, 1472 (10th Cir. 1996).

11

factors. 20 C.F.R. § 1002.150(b) ("In addition to comparing the duration of the absences, other factors *such as* the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." (emphasis added)); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 19 (2021) (noting that the words "such as" indicate the list is not exhaustive). Accordingly, a jury may consider non-enumerated factors such as frequency. But the jury alone is tasked with determining how much weight to give any factor that it considers. And on this record, we cannot discount the weight of duration as a stand-alone factor in support of comparability.[7]

*Purpose*. A reasonable jury reviewing the evidence in this case could conclude that jury-duty leave and military leave have a common purpose: civic duty. Indeed, the parties agree that those two types of leave both entail performing a public service. Of course, there is also evidence of differences: jury duty is compulsory while military duty is not, and jury-duty pay is minimal in comparison to military pay. But only a jury can decide how to weigh those distinctions in a comparability

---

[7] In *Clarkson v. Alaska Airlines, Inc.*, the Ninth Circuit recognized that USERRA's implementing regulation permits consideration of unenumerated factors such as frequency, but it held that frequency cannot be considered "an integral part of the duration analysis." 59 F.4th at 436. It reasoned that including frequency in the duration would undermine the purpose of USERRA. *Id.* (discussing USERRA's purpose of protecting reservists during their frequent absences from work). We decline to hold as a matter of law that a jury may not consider frequency alongside duration. The jury must decide how to weigh the comparability factors, including whether any factor offsets another.

analysis. Similarly, only a jury can decide how to weigh the evidence that military leave and bereavement leave share a public purpose.

*Control*. Viewing the evidence in the light most favorable to the pilots, a jury could conclude that—as with pilots who take jury-duty or bereavement leave—most pilots who take military leave lack the ability to control their schedules.

In sum, a jury could conclude that short-term military leave is comparable to jury-duty or bereavement leave. Therefore, we will reverse the grant of summary judgment on the USERRA claims.

**VI**

On the breach of contract claim, we agree with the District Court that the profit-sharing plan excludes imputed income from periods of military leave. Texas law governs this contract dispute, and it requires us to construe contracts according to their express language. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805–06 (Tex. 2012). If a "contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law." *Id.* at 806. Additionally, "[w]here an employer retains the right to interpret and change an incentive compensation plan, the employer's interpretation must stand unless the employer acted in bad faith." *Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (applying Texas law). A company may delegate to an agent the authority to interpret a plan, and "[n]o particular language is necessary for an effective delegation of performance." *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205,

1213 (10th Cir. 2001) (applying Texas law) (citation omitted). Bad faith may be established by "unreasonable requirements," standards that are "more strict than those applied to others similarly situated," or "an adverse decision which has no basis in fact." *Marsh v. Greyhound Lines, Inc.*, 488 F.2d 278, 280 (5th Cir. 1974) (applying Texas law).

The profit-sharing plan expressly excludes imputed income from the "Compensation" calculations. App. 937–38 (defining "Compensation" as "[a]mounts paid to an Employee for a Plan Year . . . less: . . . [i]mputed income").[8] We may rely on the airline's interpretation of the plan because the pilots have not demonstrated that the airline interpreted it in bad faith. From its inception, the airline has interpreted the profit-sharing plan to credit only W-2 wage income and not imputed income.

---

[8] The pilots argue that a different section of the plan (section 3.5) modifies the definition of "Compensation," rendering the term ambiguous. Section 3.5 provides, "Notwithstanding any other provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with [Internal Revenue] Code section 414(u)." App. 957–58. But even if the definition of "Compensation" were ambiguous, the airline's interpretation prevails under Texas law because the profit-sharing plan makes the airline's interpretation final. *See Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 648 (Tex. App. 2009) (holding that the only way to attack an employer's determinations that are stated to be final under a profit-sharing plan is by showing bad faith or fraud); *Kern*, 517 F.3d at 311 (honoring the employer's interpretive rights where the employer did not act in bad faith when it rendered an erroneous interpretation of a plan's term).

*See Kern*, 517 F.3d at 312 (holding that a contract interpretation did not constitute bad faith in part because the employer consistently adopted that interpretation). And while the record contains little evidence of precisely who interpreted the plan, the compensation committee or one of its designees has always been charged with this task. So we may defer to the airline's interpretation of the plan and read "Compensation" to exclude income imputed while on military leave.

*       *       *

For these reasons, we will reverse the District Court's summary judgment for the airline on the USERRA claims and remand for further proceedings on those claims. We will affirm the summary judgment for the airline on the breach of contract claim.